IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| YALENA KALENIAN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:21-cv-812-ECM |
| | ) | (WO) |
| HOWARD RUSSELL COOK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER

Now pending before the Court is the Defendant Howard Russell Cook's ("Cook")

motion for summary judgment (doc. 20).  Plaintiffs Yalena Kalenian ("Yalena") and Mark

Kalenian ("Mark") have brought claims against Cook for negligence and wantonness.

Cook has moved for summary judgment on all claims.  Upon consideration of the briefs,

evidence, and applicable law, and for the reasons that follow, the Defendant's motion for

summary judgment is due to be DENIED.

## I.  JURISDICTION

The Court has original subject matter jurisdiction of this matter pursuant to 28

U.S.C. § 1332.[1]  Personal jurisdiction and venue are uncontested, and the Court concludes

that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

---

[1] The parties do not dispute that Cook is a citizen of Georgia, Yalena is a citizen of Alabama, and Mark is a citizen of Alabama.  Thus, complete diversity exists amongst the parties.

## II. LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "[A] court generally must view all evidence and make all reasonable inferences in favor of the part[ies] opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018). If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving part[ies]," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving part[ies] ha[ve] failed to present sufficient evidence to support an essential element of the case." *Id.* The burden then shifts to the non-moving parties to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

The Court construes the facts in the light most favorable to the non-movant plaintiffs and draws all reasonable inferences in their favor. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) ("In assessing whether there is any 'genuine issue' for

2

trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving part[ies]' and 'resolve all reasonable doubts about the facts in favor of the non-movant[s].' Moreover, the court must avoid weighing conflicting evidence or making credibility determinations." (citations omitted)).

### III. FACTS

This case arises from a traffic accident that occurred on the evening of June 7, 2019. Non-party Michael Blake Cannon ("Cannon"), driving a Ford Escape, struck Cook's Toyota Avalon at the intersection of U.S. Highway 231 ("Highway 231") and John D. Odom Road in Dothan, Alabama. Husband and wife Mark and Yalena (collectively, "the Kalenians"), as well as non-party Carol King ("King"), were passengers in Cook's vehicle at the time of the accident.

Mark is a physician with an office in Dothan, Alabama. Mark has been friends with Cook, who is also a physician, for a number of years. Pursuant to this friendship, the Kalenians occasionally partook in "date nights" with Cook and his date. On date nights, the couples typically went to dinner and a movie. Traditionally, one couple paid for the entire group's dinner. The other couple would afterwards pay for the group's movie tickets. Which couple paid for which event varied. Occasionally, the couples would ride together in one vehicle on date nights. At other times, the couples would drive separately.

The couples planned a date night for June 7, 2019. That evening, Cook drove to Mark's office in Dothan with King, his date. The couples socialized for approximately thirty minutes at Mark's office. Cook then offered to drive the group to dinner and the

movie.  Although Cook suffers from Parkinson's disease and was medicated for this condition on June 7, 2019, he did not discuss his condition with the Kalenians before offering to drive.[2]  The Kalenians accepted Cook's invitation and rode in his vehicle for date night.  Cook first drove the group to a restaurant in Dothan near the movie theatre.  Cook then drove the group from the restaurant to the movie.

The Kalenians did not notice any issues with Cook's driving on the way to the restaurant or movie theatre.  They did not see Cook consume alcohol or any other mind-altering substance that evening.  Prior to the events immediately preceding the accident, the Kalenians did not observe any behavior that suggested Cook's judgment was impaired.  It is unknown which couple paid for dinner or the movies on this particular date night.  However, it is undisputed that Cook's offer to drive the Kalenians was not contingent upon their payment for one of the evening's activities.

After the movie, Cook began to drive the group back to Mark's office.  Mark was seated in the front passenger seat while Yalena and King were seated in the rear of the vehicle.  Cook drove for a short amount of time—without making any stops—in Highway 231 North's far-left lane until it approached the intersection with John D. Odom Road.  At this juncture, a left turn lane opened up on the left.  Cook moved into this turn lane to turn onto John D. Odom Road.  The parties dispute what occurred as Cook moved into this lane.

According to the Kalenians, as Cook moved into the turn lane, Mark saw that the lane's traffic signal was yellow and felt that Cook was driving at an excessive speed.  Mark

---

[2] Although Cook did not mention his Parkinson's disease on the night of the accident, Mark believes he learned that Cook had Parkinson's prior to the night of the accident.

asked Cook to slow down multiple times, but Cook disregard these requests.  Instead, Cook continued to look forwards and drive.  Mark then yelled twice for Cook to stop.  Cook continued to drive.

In the rear seat, Yalena became nervous when Cook ignored Mark's requests to slow down and stop.  Yalena unbuckled her seatbelt and pulled herself between the front two seats.  At this time, she saw that the lane's traffic signal was red.  On seeing the light, Yalena screamed for Cook to stop.  Cook also disregarded Yalena's requests.[3]  The Kalenians attest that Cook could have safely stopped his vehicle if he heeded the Kalenians' requests to slow down or stop when they were made.

Cook then entered the intersection and initiated a left turn onto John D. Odom Drive. Cook was driving around twenty miles per hour when he initiated the turn.  Cook does not dispute that his lane's traffic signal was red when he initiated the turn.  Cook admits that it was dangerous to run the red light and that he knew doing so was likely to cause injury to someone.  He also admits that he was familiar with the intersection prior to the night of the accident and knew the intersection was a busy area.  To safely execute the turn, Cook needed to clear oncoming traffic from Highway 231 South.  Cook claims that he did not see any oncoming traffic as he initiated the turn.  Mark, however, saw Cannon's Ford Escape approaching as they turned.

Cannon was driving on Highway 231 South at about fifty miles per hour.  Cannon had a green light as he approached the intersection with John D. Odom Road, so he

---

[3] Cook disputes that the Kalenians asked him to slow down or stop.

proceeded to drive through the intersection.  Cannon attests that his traffic signal was green for at least five seconds prior to his entering the intersection.  As Cannon entered the intersection, he saw Cook's vehicle initiate a left turn directly into Cannon's pathway. Cannon did not have time to avoid a collision and struck the passenger side of Cook's vehicle.  The Kalenians were both taken to the hospital after the accident and treated for injuries.  They claim that they continue to suffer injuries from the June 7, 2019 collision and bring claims against Cook for negligence and wantonness, seeking both compensatory and punitive damages.

## IV. DISCUSSION

Cook has moved for summary judgment on the Kalenians' negligence and wantonness claims.  The Kalenians oppose summary judgment on both causes of action. The Court will first address the Kalenians' negligence claims and then address their wantonness claims.

### A.  Negligence [4]

Cook argues that the Kalenians' negligence claims are barred by Alabama's guest passenger statute (the "guest statute").  The guest statute provides that

> The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner, or person responsible for the operation of the motor vehicle.

---

[4] Because this matter is before the Court on diversity jurisdiction, the state law causes of action are examined under Alabama law. *Poplin v. Bestway Express*, 286 F. Supp. 2d 1316, 1318 (M.D. Ala. 2003) (applying Alabama law to state law claims on diversity jurisdiction).

Ala. Code. § 32-1-2 (2023).

"The general rule is that if the transportation of a rider confers a benefit only on the person to whom the ride is given, and no benefits other than such as are incidental to hospitality, goodwill or the like on the person furnishing the transportation, the rider is a guest." *Sellers v. Sexton*, 576 So. 2d 172, 174 (Ala. 1991). "[T]he relationship between the host and guest is consensual in nature and involves some acceptance by the guest of the relationship and its attendant hazards; . . . misrepresentations, express or by implication, which operate to induce one to become a rider in the automobile, can nullify the relationship." *Crovo v. Aetna Cas. & Sur. Co.*, 336 So. 2d 1083, 1085 (Ala. 1976). Further, "one should not be expected to remove himself from a moving car, and thus one may not be considered a 'guest' when he is held 'captive' in a moving vehicle." *McDougle v. Shaddrix*, 534 So. 2d 228, 231 (Ala. 1988). "Whether one is a 'guest' within the meaning of this statute is ordinarily a question of fact for the jury; however, where reasonable minds can reach but one conclusion from the evidence, the question becomes one of law for the court." *Davis v. Davis*, 622 So. 2d 901, 902 (Ala. 1993).

Cook argues that he is entitled to summary judgment under Alabama's guest statute. Cook argues that the June 7, 2019 date night was a social outing and that he did not receive a benefit to transporting the Kalenians beyond those benefits incidental to goodwill and hospitality. Accordingly, Cook argues, the Kalenians were guests in his vehicle as a matter of law, and the guest statute bars the Kalenians' negligence claims against him as the driver.

The Kalenians do not argue that Cook received a material benefit by providing them transportation. Nevertheless, they argue that their negligence claims survive because they

are not guests under the guest statute for at least two reasons.  First, they argue that they did not consent to be guests in Cook's vehicle because Cook did not disclose the severity of his Parkinson's disease or its potential effect on his ability to drive safely.  Second, they argue that a reasonable juror could find that their requests for Cook to "slow down" and "stop" converted them from guests to passengers to whom the guest statute does not apply.  As a fact question remains on this issue, the Kalenians argue, summary judgment on their negligence claims would be improper.

### 1. Misrepresentation

The Kalenians first argue that they were not guests under the guest statute because Cook misrepresented the nature of his Parkinson's disease to them.  Had they known the true extent of Cook's condition, the Kalenians argue, they would not have accepted a ride in Cook's vehicle.  Cook did not file a reply brief or otherwise respond to this argument.  Notwithstanding, the Court finds this argument unpersuasive.

The Kalenians are correct that the guest statute does not bar a passenger's negligence claim when that passenger's presence in the vehicle was induced by a misrepresentation.   In *Crovo*, the plaintiff accepted a ride in a vehicle based on a representation that the vehicle's driver was taking her immediately home. *Crovo*, 336 So. 2d at 1085.  When the plaintiff learned that the driver was taking her to a restaurant, she protested. *Id.*  The Alabama Supreme Court held that the plaintiff's negligence claim was not barred by the guest statute under these circumstances. *Id.*

However, this case is nothing like *Crovo*.  First, the Kalenians do not point to a misrepresentation that induced them to ride in Cook's vehicle.  Second, Mark was aware that Cook had Parkinson's disease.  Thus, if the severity of Cook's condition would have impacted Mark's decision to ride in Cook's vehicle, Mark had the opportunity to further question Cook on the matter and chose not to do so.  Ultimately, the Kalenians seem to argue that Cook should have provided them a detailed medical report before offering to drive.  This argument does not have support in Alabama law.  The Kalenians do not fall outside of the guest statute due to any misrepresentation.

## 2. Protest

The Kalenians next argue that their requests for Cook to slow down and stop converted them from guests to "passengers."  Accordingly, they argue that their negligence claims are not barred under the guest statute.  Protests from the occupant of a vehicle can convert the individual's status from guest to passenger under the guest statute. *Roe ex rel Roe v. Lewis*, 416 So. 2d 750, 753 (Ala. 1982) ("[P]rotests by a guest may vitiate [the guest's] consent and change his status to that of a passenger."); *Hagen v. Pelletier*, 2019 WL 4894544, at *4 (N.D. Ala. Oct. 2, 2019) ("If a guest verbally objects to the activities of the driver, those protests may be sufficient to void her consent and change her status from a guest to a passenger.").  Cook argues that the Kalenians' protests were mere complaints and made too close to the time of the accident such that the Kalenians were not converted to passengers.

A vehicle's occupant can be converted from a guest to a passenger if he sufficiently protests the driver's driving and is held captive in the vehicle against his will.   In *Roe*, plaintiff high school student was a passenger in a vehicle driven by defendant driver. *Roe*, 416 So. 2d at 751.   Defendant driver initiated a vehicular pursuit after he was caught vandalizing a homeowner's front lawn. *Id.*   In his effort to flee, defendant driver reached speeds up to sixty-five miles per hour on dark, curvy, unfamiliar roads. *Id.* at 752.   During the pursuit, plaintiff passenger asked defendant driver to slow down or stop the vehicle. *Id.* Other passengers asked to exit the vehicle. *Id.*   The defendant driver did not heed these requests and crashed into a tree. *Id.*   The Alabama Supreme Court held that the plaintiff's protests changed his guest status such that his negligence claim was not barred. *Id.* at 753. The Court reasoned that barring the plaintiff's negligence claim would "insulate the defendant from liability by making plaintiff a captive to defendant's negligent acts despite protests to the contrary." *Id.*   Such an outcome would not further the guest statute's purpose of protecting generous drivers in "close cases of negligence." *Id.*

An occupant in a vehicle cannot claim to be held captive for purposes of the guest statute if that occupant declines an opportunity to safely exit the vehicle.   In *McDougle*, the plaintiff "made some complaints about [the defendant's] driving" while riding in the defendant's vehicle.[5] *McDougle*, 534 So. 2d at 231.   After the plaintiff made these complaints, the defendant driver stopped at a stop sign. *Id.* at 230.   While the vehicle was stopped, the plaintiff opened his car door and waved at friends in the vehicle behind him.

---

[5] The substance of these complaints is not clear from the opinion.

*Id.*  The plaintiff then shut the car door and remained inside the vehicle. *Id.*  The plaintiff was injured in an accident that occurred immediately after the driver continued driving. *Id.* The Alabama Supreme Court held that the plaintiff's negligence claim was barred by the guest statute because the plaintiff's "mere complaints . . . did not constitute sufficient 'protest.'" *Id.* at 231.  The Court reasoned that, to circumvent the guest statute, the plaintiff "would have had to become actually a captive, an involuntary occupant held against his will and by duress." *Id.*  The Court reasoned that there was no evidence that the plaintiff was held captive, particularly because the plaintiff chose to remain in the vehicle after opening his door at the stop sign. *Id.*  The Court reasoned that such conduct contradicted the plaintiff's argument that he was held captive in the vehicle. *Id.*

The Kalenians' case falls between *Roe* and *McDougle*.  Here, the Kalenians' protests were not as direct as those made in *Roe*, where the passengers asked to be let out of the vehicle.  Further, the protests in *Roe* took place over the course of a vehicular pursuit, not in the events immediately preceding the accident.  Thus, the passengers in *Roe* had a more realistic opportunity to safely exit the vehicle than did the Kalenians.  However, the Kalenians' argument is stronger than the plaintiff's in *McDougle*.  In that case, the plaintiff declined his opportunity to safely exit the vehicle.  Here, unlike in *McDougle*, the Kalenians did not have an opportunity to safely exit the vehicle after protesting Cook's driving.  Thus, the Kalenians did not decline an opportunity to exit the vehicle as did the plaintiff in *McDougle*.

Crucial to the Kalenians' argument at summary judgment is their testimony that Cook had time to safely stop the vehicle had he heeded their protests when they were made.

11

This testimony makes this case resemble *Hagen*, in which the Northern District of Alabama found that the plaintiff's negligence claims survived summary judgment despite the guest statute. In *Hagen*, plaintiff college student accepted defendant driver's offer to drive her to a friend's apartment. *Hagen*, 2019 WL 4894544, at \*2. Plaintiff college student asked defendant driver to "stop" after the driver started driving erratically. *Id.* The defendant driver ignored the plaintiff's requests and crashed into a tree. *Id.* The court found that the plaintiff's negligence claims survived Alabama's guest statute because the plaintiff "object[ed] to the activities of the driver;" thus, a fact issue remained as to "whether these protestations changed her status from guest to passenger." *Id.* at \*4.

Following the reasoning applied in *Hagen*, a fact question remains that is properly resolved by a jury. A reasonable juror could determine, on the evidence submitted, that the Kalenians' protests converted them from guests to passengers before the collision occurred. Should the jury make such a determination, the guest statute would not bar the Kalenians' negligence claims. Accordingly, Cook's motion for summary judgment on the negligence claims is due to be denied.

### B. Wantonness

Cook also seeks summary judgment on the Kalenians' wantonness claims. Wantonness is "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(3) (2023). Thus, wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Lands v. Ward*, 349 So. 3d 219, 229 (Ala. 2021) (quoting *Ex parte*

*Essary*, 992 So. 2d 5, 9 (Ala. 2007)).  "Knowledge need not be proven directly but may be inferred from the facts of the case." *Klaber ex rel Klaber v. Elliott*, 533 So. 2d 576, 579 (Ala. 1988).

Cook argues that the Kalenians have not submitted evidence that his "conduct on the day of the accident was so inherently reckless as to indicate the kind of depravity from which the court could impute a disregard for the normal instincts of self-preservation." (Doc. 20-1 at 16).  Further, because Cook was just as likely to be injured by his conduct as the Kalenians were, he argues that he is entitled to a presumption that he "would not have intentionally or knowingly engaged in self-destructive behavior." (*Id.*).  Thus, Cook argues that he is entitled to summary judgment.  The Kalenians respond that they have submitted sufficient evidence of wantonness to survive summary judgment.  The Kalenians point to Alabama case law and testimony from Cook's deposition in support of their argument.

A driver's disregard for a passenger's warning about an oncoming driving hazard can support a claim for wantonness against that driver.  In *Crovo*, defendant driver operated a vehicle in which the plaintiff and other individuals were passengers. *Crovo*, 336 So. 2d at 1084.  Shortly after the defendant started driving, a passenger warned defendant driver that the vehicle was about to exit the road. *Id.* at 1085.  Defendant driver did not respond to this warning. *Id.*  Defendant driver then crashed into a ditch. *Id.*  The Alabama Supreme Court held that there was sufficient evidence to submit the plaintiff's wantonness claim to a jury. *Id.*  In reaching this conclusion, the Court reasoned that the driver did not respond to the passenger's warning that the car was about to exit the road. *Id.*

Here, as in *Crovo*, the Kalenians say they warned Cook about an oncoming driving hazard.  Also like in *Crovo*, Cook allegedly ignored that warning and was involved in an accident immediately afterwards.  Under *Crovo*, the Kalenians' testimony that they warned Cook to stop and slow down supports their wantonness claim.  A reasonable juror could determine that the Kalenians' warnings alerted Cook that an injury was likely to occur if he did not alter his course of driving.  A reasonable juror could also conclude that Cook ignored the Kalenians' warnings in conscious or reckless disregard of this likelihood of injury.

The wantonness claims are further supported by Cook's own deposition testimony. Cook admitted that—prior to the night of the accident—he was familiar with the intersection where the accident occurred and knew it to be a busy area.  Cook also admitted that it was dangerous to turn left on a red light at that intersection and that he knew doing so was likely to cause an injury to someone.  Cook's own testimony overcomes any presumption against self-destructive behavior.   The Kalenians submitted sufficient evidence of wantonness to reach a jury,[6] and Cook's motion for summary judgment on those claims is due to be denied.

## V. CONCLUSION

For the reasons discussed above, it is hereby

---

[6] The Court recognizes that negligence and wantonness "are qualitatively different tort concepts of actionable culpability" under Alabama law. *Tutor v. Sines*, 2023 WL 2054060, at *2 (Ala. Feb. 17, 2023). However, the Kalenians submitted sufficient evidence to present both claims to the jury.

ORDERED that the Defendant's motion for summary judgment (doc. 20) is DENIED.

Done this 18th day of July, 2023.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE